THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:22-CV-147-FL

| | | |
|---|---|---|
| TIMOTHY BEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| BUTTERBALL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on plaintiff's motion for leave to amend (DE 81) and the parties' cross-motions for summary judgment (DE 79, 85). Though styled in part as a motion for summary judgment, plaintiff's motion for summary judgment is, in substance, a motion to strike defendant's pleadings and for sanctions. For the following reasons, plaintiff's motions are denied and defendant's motion is granted.

## STATEMENT OF THE CASE

Plaintiff began this employment discrimination suit pro se by moving for leave to proceed in forma pauperis on November 29, 2022, which motion was allowed February 14, 2023. Plaintiff asserts claims for racial and religious 1) discrimination; 2) harassment; and 3) retaliation, all under the Fourteenth Amendment to the United States Constitution and under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"). (Compl. (DE 5) 2–3). Plaintiff seeks over $2 million in damages, in the form of compensatory and punitive damages, front pay, and back pay. (Id. at 3).

Discovery in this case was contentious. Plaintiff repeatedly refused to attend mediation or his deposition. (See Order (DE 73) 1–6). As a result, United States Magistrate Judge Kimberly Swank assessed monetary sanctions against plaintiff, after concluding that such refusal was in bad faith and prejudiced defendant. (Id. at 8–10).

On December 11, 2024, plaintiff filed the instant motion for summary judgment and to strike defendant's pleadings, relying upon his declaration, correspondence from defendant's counsel, and filings in this case. That same date, plaintiff moved for leave to amend his complaint. Defendant responded in opposition to plaintiff's motions, and then filed the instant motion for summary judgment January 6, 2025, relying on a statement of material facts and exhibits comprising declarations of its employees, plaintiff's discovery responses, plaintiff's deposition testimony, and internal forms and correspondence.

## STATEMENT OF FACTS

Defendant manufactures a "wide variety" of turkey products. (Def's SMF (DE 86) ¶ 1).[1] Defendant is headquartered in Garner, North Carolina, and has production facilities in North Carolina, Arkansas, and Missouri. (Id. ¶ 3). Defendant maintains a plant in Mount Olive, North Carolina, which produces a variety of turkey products and conducts distribution, storage, and support functions. (Id. ¶ 4). This plant employs approximately 2,700 employees. (Id. ¶ 5).

---

[1] Plaintiff did not file a statement of material facts in support of his own motion, nor did he file an opposing statement of material facts in response to defendant's statement. Plaintiff submitted what he styles as an "opposing statement of facts" as part of his memorandum in support of his own motion. (See Pl's Br. (DE 91) 1–7). However, the vast majority of these asserted facts lack evidentiary support, and merely express plaintiff's subjective disagreement with certain facts presented by defendant. (See, e.g., id. ¶¶ 1–2, 6). That said, a few of plaintiff's assertions of fact are linked to evidentiary support. (See id. ¶¶ 5, 7, 10, 12–14).

Accordingly, the court considers defendant's statement of material facts to be uncontroverted except, in deference to plaintiff's pro se status, insofar as one of plaintiff's statements of fact with evidentiary support could be read to attempt to controvert a statement of fact from defendant. See Local Civ. R. 56.1(a)(2). The court will not consider, however, any of plaintiff's assertions of fact that merely express his disagreement with certain facts in summary fashion without evidentiary support. Wai Man Tom v. Hosp. Ventures LLC, 980 F.3d 1027, 1037 (4th Cir. 2020).

Defendant has established an alcohol and drug free policy (the "Policy"). (Id. ¶ 13). The Policy states that it aims to secure a safe workplace, and describes several circumstances in which defendant's personnel may administer alcohol and drug testing to detect "users of alcohol [or] drugs . . . and remove them from the work environment." (Id. ¶ 15). The Policy requires testing to be administered in seven situations: 1) post offer/pre-employment drug screen; 2) suspicion of being under the influence by a management and confirmed by a second member of management; 3) when an associate is found in possession of alcohol or suspected drugs, or when any substances are found in an area controlled or used exclusively by said associate; 4) when an associate is involved in an altercation; 5) post-accident; 6) random selection; or 7) drivers of company vehicles as mandated by DOT. (Id. ¶ 16). Supervisors and members of defendant's human resources ("HR") team receive training on what constitutes reasonable suspicion. (Id. ¶ 17). The Policy states that violations will result in discipline up to and including termination, and that associates with under one year of service will be terminated. (Id. ¶ 18).

Plaintiff was hired by defendant on November 29, 2021. (Id. ¶ 19). Plaintiff is black. (Id.). During his employment, plaintiff worked the evening shift in the production department at the Mount Olive plant. (Id. ¶ 20). During his employment, plaintiff reported to Darrell Chapman ("Chapman"), who is black. (Id. ¶ 21). Blanche Temple ("Temple"), who is white, was the team lead of plaintiff's production team when he started. (Id. ¶ 22).

On January 26, 2022, plaintiff filed a complaint about Temple, alleging that she "continues to humiliate, intimidate, embarrass, yell at . . . insult[] . . . and having abusive behavior towards [plaintiff] [sic]," and that Temple "yell[ed] and harass[ed]" plaintiff. (See id. ¶¶ 37–40; Pl's Br. ¶ 5). Defendant asserts that it never received this document, and plaintiff states that he mailed it to

3

the address of defense counsel's former law firm. (See Def's SMF ¶¶ 58–60). Plaintiff moved to another production line in what he estimates to have been April 2022. (Id. ¶ 41).

Plaintiff spoke to his coworkers about his religion, but identifies no statement made to him about his religion other than an "implication" that Temple disapproved of his religion, and that she once said "religion isn't right." (Id. ¶ 42). Temple once called plaintiff a "dumb black ass." (Id. ¶¶ 47–48). Plaintiff did not report any of these statements in any internal complaint, in his Equal Employment Opportunity Commission ("EEOC") charge, or in his complaint. (Id. ¶¶ 43, 53). No other employee of defendant ever made any comment about plaintiff's race or religion. (Id. ¶ 54).

Associates, including plaintiff, working on the production line were permitted to take two unpaid 34-minute meal breaks per shift. (Id. ¶ 23). Plaintiff's production line worked the evening shift, so its employees agreed together to take only one meal break to finish early. (Id. ¶ 24). Plaintiff contacted defendant's HR department twice during his employment to report an issue about his pay. (Id. ¶ 25). First, plaintiff reported to the HR department in March 2022 that he had complained to Chapman that two meal breaks were being deducted from his pay, even though his team took only one such break. (Id. ¶ 27). A member of the HR department confirmed this information and informed plaintiff that Chapman would submit a payroll adjustment. (Id. ¶ 28). Second, on May 4, 2022, plaintiff reported that he had not received his pay adjustment. (Id. ¶ 30). Eventually, Chapman and the HR department successfully executed the payroll adjustment, which plaintiff's May 13, 2022, paycheck reflected. (Id. ¶¶ 31–35).

On May 11, 2022, Kyle Parker ("Parker"), a supervisor, smelled alcohol on plaintiff while he was working. (Id. ¶ 63). As a result, Parker brought plaintiff to the HR office to be assessed. (Id. ¶ 64). Parker informed HR team member Kellie Matute ("Matute") that he had reasonable suspicion that plaintiff was under the influence of alcohol, based on his personal observations and

those of Chapman. (Id.). During the resulting conversation with plaintiff, Matute observed that plaintiff smelled of alcohol, was stumbling, and had red eyes. (Id. ¶ 65). A member of defendant's safety team, Chris Raynor ("Raynor") was also present during this conversation. Parker, Chapman, and Matute are all members of defendant's management. (Id. ¶ 66).

Accordingly, based on her own observations and those of Parker and Chapman, Matute determined that there was reasonable suspicion under the Policy that plaintiff was under the influence of alcohol. (Id. ¶ 71). Matute asked plaintiff to accompany her and HR team member Adrian Freeman ("Freeman") to Occupational Health Services ("OHS"). (Id. ¶ 72). At OHS, Matute informed plaintiff that she believed he was under the influence of alcohol, and requested plaintiff's consent for an alcohol test. (Id. ¶¶ 74–75). Plaintiff consented to the test, and at first claimed he had not been drinking. (Id. ¶ 76). The test consisted of two parts: a screening test and then a confirmation test to verify the screening test's reading. (Id. ¶¶ 79). Katrenna Gomez ("Gomez"), a nurse at OHS, performed the test. (Id. ¶ 77). Before the test, plaintiff admitted he had consumed alcohol earlier that day. (Id. ¶¶ 80–81). Plaintiff tested positive for alcohol with a blood alcohol content of 0.101, above the legal limit to drive. (Id. ¶¶ 83, 85). Matute and Freeman informed plaintiff that he was being suspended, that he would be taken home, and that he should not report to work the next day. (Id. ¶¶ 88–89).

Given plaintiff's blood alcohol content, Matute arranged for another employee to drive plaintiff home. (Id. ¶ 90). Instead, plaintiff drove himself home. (Id. ¶ 91). Matute informed the sheriff's office, but plaintiff could not be located because Matute could not provide information about plaintiff's vehicle. (Id. ¶ 92). After plaintiff drove himself home, Matute reported this incident to more senior management, and the decision was made to terminate plaintiff. (Id. ¶ 93). Matute informed Freeman of this decision, and Freeman was responsible for informing plaintiff.

(Id. ¶ 94). Temple was not involved in this decision. (Id. ¶ 95). When informed of the decision, plaintiff did not challenge his termination or raise any complaint about discrimination. (Id. ¶ 97).

## COURT'S DISCUSSION

A. Standard of Review

1. Motion for Leave to Amend

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A motion for leave to amend should be allowed "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).[2] "A proposed amendment is . . . futile if the claim it presents would not survive a motion to dismiss." Save Our Sound OBX, Inc. v. N. Carolina Dep't of Transportation, 914 F.3d 213, 228 (4th Cir. 2019); see In re Triangle Cap. Corp. Sec. Litig., 988 F.3d 743, 750 (4th Cir. 2021) ("[D]istrict courts are free to deny leave to amend as futile if the [pleading] fails to withstand Rule 12(b)(6) scrutiny.").

2. Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

---

[2] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable

7

inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B. Analysis

The court evaluates plaintiff's motion to amend first, then turns to the cross-motions for summary judgment.

    1. Plaintiff's Motion to Amend

Plaintiff has moved for leave to amend his complaint. Defendant contends his proposed amended complaint is futile, and that leave to amend should be denied. The court agrees with defendant.

Plaintiff's proposed amended complaint contains, as best the court can determine, three claims. First, plaintiff repeats his Title VII claims addressed below. (See Proposed Am. Compl. (DE 77) 1). But this claim contains even less substance than in his original complaint, merely claiming in summary form that defendant harassed and retaliated against him in violation of that statute. This claim contains no facts in support whatsoever, and accordingly is futile. (See id.). Second, plaintiff presents a claim under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA"). (See id.). However, this claim is advanced in conclusory form. Plaintiff asserts with no elaboration or facts in support that defendant "unlawfully terminat[ed] [him] . . . in violation of the [FLSA]." (Id. at 2). This skeletal assertion does not satisfy pleading standards, even for a pro se litigant. Instead, this amounts to an "unadorned, the-defendant-unlawfully-harmed-me accusation," which "will not do." Iqbal, 556 U.S. at 678.

Next, plaintiff presents a meritless argument that Magistrate Judge Swank's order sanctioning plaintiff for his obstructionism during discovery violated the Eighth Amendment. (See Proposed Amended Compl. at 2–3). The court has located no authority supporting the application

8

of the Eighth Amendment to court-ordered sanctions.  Cf. Upchurch v. O'Brien, 111 F.4th 805, 813–14 (7th Cir. 2024) (stating that the Eighth Amendment has "no bearing" on court-ordered sanctions).  But even if this were a valid legal theory, defendant is a private party to which the constitution generally does not apply.  E.g., DeBauche v. Trani, 191 F.3d 499, 506–07 (4th Cir. 1999).  Thus, plaintiff's proposed amended complaint is futile and leave to amend is denied.

Finally, plaintiff argues throughout his filings that defendant's failure to answer his proposed amended complaint constituted sanctionable conduct.  (E.g., Sur-reply Supp. Mot. Amend (DE 92) 1).  However, plaintiff's proposed amended complaint was neither consented-to nor filed within the requisite time period for an amendment as of right.  Fed. R. Civ. P. 15(a)(1).

2. Plaintiff's Motion for Summary Judgment

Though styled in part as a motion for summary judgment, as noted earlier, plaintiff's motion sounds as one to strike defendant's pleadings and for sanctions.  Plaintiff fails to identify any claims on which he seeks summary judgment, or to present any evidence or argument for that purpose whatsoever.  Instead, plaintiff summarily invokes the FLSA and presents an argument under the Eighth Amendment to the United States Constitution that is without basis in law or fact. (See generally Pl's Br. Summ. J. (DE 80)).  The court has addressed these arguments above, but nothing in plaintiff's filings even conceivably establishes his entitlement to summary judgment on any claim.  Plaintiff also fails to demonstrate that striking defendant's pleadings or assessing any other sanction is appropriate.  This motion is therefore denied.

3. Defendant's Motion for Summary Judgment

Defendant argues that plaintiff's four claims are all subject to summary judgment.  The court agrees.

9

a. Title VII Discrimination

To establish a prima facie case of discrimination under Title VII, plaintiff must show 1) membership in a protected class; 2) satisfactory job performance; 3) adverse employment action; and 4) different treatment from similarly situated employees outside that protected class. Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).

Plaintiff fails to establish a prima facie case. Plaintiff admitted he had consumed alcohol before coming to work, then tested positive for alcohol on company premises and drove home drunk against instructions. (E.g., Matute Decl. (DE 87-1) ¶¶ 21–28). All this conduct was in contravention of the Policy and the instructions of plaintiff's supervisors. (Id. ¶¶ 14–15, 27–28). Plaintiff therefore fails to demonstrate satisfactory job performance.

In addition and in the alternative, plaintiff has produced no evidence or argument that he was treated differently in any way from persons outside his protected classes.

Plaintiff's claim for discrimination under Title VII therefore fails.

b. Title VII Harassment

To establish a harassment claim under Title VII, a plaintiff must show that he experienced harassment that was 1) unwelcome; 2) based on protected status; 3) sufficiently severe and pervasive to alter the conditions of employment; and 4) imputable to the employer. Carter v. Ball, 33 F.3d 450, 461 (4th Cir. 1994). The third element is a high bar, and harassing conduct must be "so extreme as to amount to a change in the terms and conditions of employment." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). However, Title VII does not establish a "civility code for the American workplace," and "offhand comments and isolated incidents (unless extremely serious)" will not satisfy this test. Id.

No allegation in plaintiff's complaint or discovery materials meets this standard.

First, plaintiff's complaints about his pay are unrelated to his race or religion, and plaintiff presents no evidence or argument otherwise. The miscalculation of plaintiff's pay therefore fails the second element. Ball, 33 F.3d at 461.

Second, Temple's actions in shouting at and picking on plaintiff do not suffice. Plaintiff presents no evidence or argument that these actions were connected to any protected status, and in any case they do not rise to the level of actionable harassment. See Holloway v. Maryland, 32 F.4th 293, 301 (4th Cir. 2022) (supervisor yelling at and criticizing plaintiff, and requiring plaintiff to address him as "sir," did not suffice); cf. Sunbelt Rentals, Inc., 521 F.3d at 316 (holding that extraordinary campaign of harassment, religious epithets, and calls to "kill . . . all" members of plaintiff's protected class met standard).

Third, Temple said "religion isn't right" to plaintiff, and once called him a "dumb black ass." (Def's SMF ¶¶ 42, 47–48). There comments are objectionable and offensive, but not actionable under Title VII. Even objectively offensive events are not always actionable, and these are "isolated incidents" which do not meet the standard. See Sunbelt Rentals, Inc., 521 F.3d at 315. Temple's conduct occurred only a few times, was not physically threatening, and did not unreasonably interfere with plaintiff's job performance. See id. (listing these factors).

Fourth, the administration of the alcohol test has no connection to any protected status, and so cannot constitute harassment actionable under Title VII. Ball, 33 F.3d at 461.

        c.        Title VII Retaliation

To prove a retaliation claim, plaintiff must show 1) he engaged in a protected activity; 2) the employee acted adversely against him; and 3) there was a causal connection between the protected activity and the asserted adverse action. Strothers v. City of Laurel, Md., 895 F.3d 317, 327 (4th Cir. 2018).

Even assuming that plaintiff's January 2022 letter satisfies the first element, three months passed between that letter and plaintiff's termination.  A three month interval between a protected activity and an adverse action does not support the required causal connection.  <u>Roberts v. Glenn Indus. Grp., Inc.</u>, 998 F.3d 111, 127 (4th Cir. 2021).  Plaintiff also has not demonstrated a genuine issue of material fact as to causation, in light of the intervening reasons for plaintiff's termination.

        d.        Fourteenth Amendment

Finally, plaintiff's claim for a violation of the Fourteenth Amendment also fails.  Defendant is a private party to which that Amendment does not apply, and against which any linked claim under 42 U.S.C. § 1983 cannot succeed.  <u>See, e.g.</u>, <u>Trani</u>, 191 F.3d at 506–07.

## CONCLUSION

Based on the foregoing, plaintiff's motions for leave to amend (DE 81) and for summary judgment (DE 79) are DENIED.  Defendant's motion for summary judgment (DE 85) is GRANTED.

SO ORDERED, this the 30th day of May, 2025.

                                              LOUISE W. FLANAGAN  
                                              United States District Judge